**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-20998
_____


SPHERE DRAKE INSURANCE CO.,

Plaintiff-Appellee,

VERSUS

LA GLORIA OIL AND GAS CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-1489)
_____

July 18, 1997

Before POLITZ, Chief Judge, HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Sphere Drake Insurance Co. ("Sphere Drake") brought this suit to obtain a declaratory judgment in an insurance coverage dispute. Sphere Drake believes it is under no duty to defend and indemnify La Gloria Oil and Gas Co. ("La Gloria") in a wrongful death lawsuit (the "Pyron lawsuit") initiated by the survivors of Donnie Pyron.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

La Gloria believes it is an "additional insured" under a commercial general liability policy issued to Sieber & Calicutt, Inc. ("S&C"). Following cross-motions for summary judgment on the coverage issue, the district court granted Sphere Drake's summary judgment motion, denied La Gloria's partial summary judgment motion, and dismissed La Gloria's counterclaim. We now affirm.

I.

A.

La Gloria owns and operates an oil refinery in Tyler, Texas. In July 1991, it entered into a service agreement with S&C under which S&C provided maintenance services for the refinery. The contract was for a fixed duration of one year, commencing on or about July 1, 1991, and terminating on or about July 1, 1992. Moreover, the contract could be amended only by written agreement. Nevertheless, S&C allegedly continued to perform services under the contract, following the expiration date of the original agreement, and La Gloria continued to compensate S&C under the contract terms.

On November 15, 1993, La Gloria and S&C executed a letter agreement that extended the original service contract through May 15, 1994. The effective date of the extension was November 15, 1993, however, and the extension did not retroactively ratify the contract for services performed between July 1, 1992, and November 15, 1993. Accordingly, the parties dispute whether the contract was in effect during this interim period.

The service contract provided that S&C must maintain adequate liability insurance coverage during the duration of the contract. Moreover, to protect La Gloria from any liability, loss, or expense arising from services performed by S&C pursuant to the contract, S&C was also required to add La Gloria as an "additional insured" on all insurance certificates.

In accordance with the contract, S&C purchased a commercial liability policy from Sphere Drake, naming La Gloria as an "additional insured." The policy included, *inter alia*, a blanket endorsement extending coverage to include "any person or organization as additional insured on a blanket basis where required by contract but only with respect to operations performed by the named insured pursuant to a written contract which is covered by the policy to which this is a part."

On April 28, 1993, Pyron was killed when he fell into an oil/water separator at the refinery and was scalded to death. Pyron's survivors filed a lawsuit against La Gloria, his employer, and subsequently amended the complaint to add S&C as a defendant, alleging that S&C had, "without permission, and apparently without the knowledge of anyone, caused a condensate line containing extremely hot water to be run from the building it was occupying into the separating tank in which Donnie Pyron met his final [*sic*] death." Claiming that S&C had trespassed on La Gloria property and knowingly created an unreasonably dangerous condition, the

3

plaintiffs sought damages for gross negligence and intentional misconduct.

La Gloria tendered the Pyron complaint to Sphere Drake, claiming it was entitled to defense and indemnity. Sphere Drake refused to defend, however, claiming that the service contract between La Gloria and S&C had expired prior to the accident and that the Pyron complaint stated claims outside the coverage of the policy. Thus, Sphere Drake argued that La Gloria did not qualify as an "additional insured."

B.

Sphere Drake sought a declaration that La Gloria is not entitled to defense and indemnity. The parties filed motions for summary judgment on the coverage issue.[2] La Gloria moved for partial summary judgment, claiming that it was an "additional insured." Sphere Drake filed a motion for summary judgment, claiming that the contract between La Gloria and S&C had expired before the accident, and thus La Gloria was not an "additional insured."

Furthermore, Sphere Drake claimed that the Pyron complaint's allegation that S&C had trespassed on La Gloria property and built the steam condensate line without La Gloria's knowledge or consent

---

[2] In addition, La Gloria filed a counterclaim alleging breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing.

4

did not constitute actions "pursuant to" the service contract and thus were not covered by the S&C policy.  Finally, Sphere Drake moved for leave to amend its pleadings in order to assert the "employee exclusion" as an affirmative defense.  Because Pyron was a La Gloria employee, Sphere Drake contended, the claims alleged in the Pyron complaint were not covered by the S&C policy, which incorporated an express "employee exclusion."

C.

The magistrate judge concluded that La Gloria did not qualify as an "additional insured" under the language of the policy, because the allegations in the Pyron complaint did not constitute activities "pursuant to" the contract between La Gloria and S&C. Therefore, the magistrate judge recommended that the district court grant Sphere Drake's motion for summary judgment, deny La Gloria's motion for partial summary judgment, deny Sphere Drake's motion for leave to amend the pleadings, and dismiss La Gloria's counterclaim. The district court accepted the magistrate judge's recommendation, granting summary judgment for Sphere Drake, and La Gloria appealed.

II.

We review a summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). After a motion for summary judgment has been filed, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

6

III.

In granting summary judgment to Sphere Drake, the district court concluded that La Gloria did not qualify as an "additional insured." Therefore, the court held that Sphere Drake had no duty to defend or indemnify La Gloria. We agree.

A.

The duty to defend is determined by the "eight corners rule." In deciding whether an insurer is required to defend, Texas courts may consider only the allegations in the complaint and the terms of the policy. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997).[3] For purposes of this inquiry, the factual allegations in the complaint must be taken as true, and extrinsic evidence may not be considered to rebut the allegations. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.§§Houston [1st Dist.] 1990, writ denied).[4] Consequently, because the inquiry is strictly limited to the four corners of the underlying complaint and the four corners of the insurance policy, this rule is commonly characterized as the "eight

_____

[3] *See also American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847-48 (Tex. 1994); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965); *Capital Bank v. Commonwealth Land Title Ins. Co.*, 861 S.W.2d 84, 87-88 (Tex. App.§§Houston [1st Dist.] 1993, no writ); *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153-54 (Tex. App.§§Dallas 1990, writ dism'd).

[4] *Accord National Union*, 939 S.W.2d at 142. *See also Heyden*, 387 S.W.2d at 24; *Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co.*, 875 S.W.2d 788, 789 (Tex. App.§§Eastland 1994, writ denied); *Capital Bank*, 861 S.W.2d at 88; *American Alliance*, 788 S.W.2d at 153-54.

corners rule." *See Texas Med. Liab. Trust v. Zurich Ins. Co.*, 1997 WL 151979, at *2 (Tex. App.§§Austin Apr. 3, 1997, n.w.h.). "Under this so-called 'eight corners rule' or 'complaint allegation rule,' the allegations of the complaint are taken as true, and the duty to defend arises if the complaint thus construed asserts a claim facially within the coverage of the policy as reflected by its terms." *LaFarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).[5]

In applying the "eight corners rule," the allegations in the complaint must be construed liberally, and any legitimate doubt must be resolved in favor of the insured. *National Union*, 939 S.W.2d at 141; *accord LaFarge*, 61 F.3d at 394.[6]

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Heyden Newport*, 387 S.W.2d at 26 (quoting 50 A.L.R.2d 458, 504).

Furthermore, because the "eight corners rule" requires courts to determine whether the allegations in the complaint state a claim

---

[5] *See also Nautilus Ins. Co. v. Zamora*, 114 F.3d 536, 538 (5th Cir. 1997) (summarizing Texas law governing the duty to defend); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993) (same).

[6] *See also Texas Med. Liab. Trust*, 1997 WL 151979, at *2; *Clemons*, 879 S.W.2d at 391-92; *Duncanville Diagnostic Ctr., Inc.*, 875 S.W.2d at 789.

8

covered by the policy, the court must consider these allegations with reference to the terms of the policy. *See Houston Petroleum*, 830 S.W.2d at 155. Under Texas law, insurance policies are strictly construed in favor of the insured, in order to avoid the exclusion of coverage.[7] If the language is ambiguous, and the policy is subject to more than one reasonable interpretation, the ambiguity must be construed liberally in favor of the insured, and the court must adopt the interpretation that affords coverage. *See LaFarge*, 61 F.3d at 396; *Old Republic*, 2 F.3d at 107; *Gulf Chem.*, 1 F.3d at 369. Nevertheless, when the contractual terms of an insurance policy are unambiguous, they must be given their plain meaning.[8]

Accordingly, if a complaint states a claim within the terms of the policy, the insurer incurs a duty to defend. "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *Houston Petroleum*, 830 S.W.2d at 155. If the complaint does not state a claim within the scope of coverage, however, the insurer is not legally required to defend.

---

[7] *Clemons v. State Farm Fire & Cas. Co.*, 879 S.W.2d 385, 391 (Tex. App.SSHouston [14th Dist.] 1994, no writ); *Houston Petroleum*, 830 S.W.2d at 155; *accord Old Republic Ins. Co. v. Comprehensive Health Care Assoc.*, 2 F.3d 105, 107 (5th Cir. 1993).

[8] *LaFarge*, 61 F.3d at 396; *Gulf Chem.*, 1 F.3d at 369; *Clemons*, 879 S.W.2d at 391; *Houston Petroleum*, 830 S.W.2d at 155.

*National Union*, 939 S.W.2d at 141; *accord LaFarge*, 61 F.3d at 393.[9]

## B.

The district court concluded that La Gloria did not qualify as an "additional insured." In order for La Gloria so to qualify, the activities that form the basis of the Pyron lawsuit must have been "performed by the named insured pursuant to a written contract" between S&C and La Gloria. Finding that the Pyron lawsuit did not concern activities performed "pursuant to" the service contract, the district court granted summary judgment for Sphere Drake.

The interpretation of an insurance contract is a pure question of law that we review *de novo*. *Old Republic*, 2 F.3d at 107; *Clemons*, 879 S.W.2d at 391. As a threshold matter, La Gloria urges us to conclude that the "eight corners rule" does not govern the determination whether it qualifies as an "additional insured" under the S&C insurance policy, but merely determines whether the Pyron complaint states a claim within the coverage of the policy. The Texas Court of Appeals squarely resolved this issue in a recent decision, however, holding that the "eight corners rule" governs the determination whether a party is an "additional insured" for purposes of the duty to defend. *See Texas Med. Liab. Trust*,

---

[9] *See also American Physicians*, 876 S.W.2d at 848; *Texas Med. Liab. Trust*, 1997 WL 151979, at *2; *Houston Petroleum*, 830 S.W.2d at 155.

10

1997 WL 151979, at *2-*3 & n.5.[10]

Accordingly, we apply the "eight corners rule" to determine whether La Gloria qualifies as an "additional insured." Insofar as La Gloria and Sphere Drake submit extrinsic evidence to support their interpretations of the policy, such evidence is inadmissible and must be disregarded. "In Texas, an insurer's duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings." *National Union*, 939 S.W.2d at 142 (quoting *Houston Petroleum*, 830 S.W.2d at 155).

1.

The district court concluded that the Pyron lawsuit did not concern activities performed "pursuant to" the service contract, because the complaint alleged that S&C had trespassed on La Gloria property and knowingly created an unreasonably dangerous condition, installing the steam condensate line without obtaining permission from La Gloria. Accordingly, the court found that the complaint did not state a claim within the coverage of the policy, and granted summary judgment for Sphere Drake.

On appeal, La Gloria claims S&C was an independent contractor, and La Gloria did not exercise control over its activities. Consequently, the fact that S&C installed the steam condensate line

---

[10] *See also Heyden Newport*, 387 S.W.2d at 25 (concluding that there is no distinction between the named insured and the additional insured for purposes of the duty to defend).

without La Gloria's knowledge or permission does not establish that S&C trespassed on La Gloria's property, nor does it prove that S&C's actions were not conducted "pursuant to" the contract. By confusing the phrase "pursuant to" with knowledge and permission, La Gloria claims, the district court misinterpreted the contract. We agree.

First, in reviewing the allegations in the Pyron complaint, we are obliged to focus on the factual allegations, rather than the legal theories alleged in the complaint. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 1997 WL 78574, at *1 (Tex. Feb. 21, 1997); *National Union*, 939 S.W.2d at 141-42.[11] Therefore, the legal conclusion that S&C "trespassed" on La Gloria property, alleged in the Pyron complaint, does not exclude coverage.

Second, La Gloria argues that the plain meaning of the phrase "pursuant to," as used in the contract between S&C and La Gloria, includes all activities performed in the course of carrying out the service contract. *See* BLACK'S LAW DICTIONARY 1237 (6th ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1848 (1986). Consequently, because S&C installed the steam condensate line in the course of performing its obligations under the contract, the Pyron complaint concerns activities performed "pursuant to" the service contract, and La Gloria is entitled to coverage as an "additional insured."

---

[11] *See also Clemons*, 879 S.W.2d at 392; *Duncanville Diagnostic Ctr.,* 875 S.W.2d at 789.

12

At a minimum, this is a reasonable construction of the policy. Under such circumstances, if the terms of the policy are ambiguous, the ambiguity must be construed liberally in favor of the insured, and the court must adopt the interpretation that affords coverage. *See LaFarge*, 61 F.3d at 396; *Old Republic*, 2 F.3d at 107; *Gulf Chem.*, 1 F.3d at 369. Under Texas law, insurance policies are strictly construed in favor of the insured, in order to avoid exclusion of coverage. *Old Republic*, 2 F.3d at 107; *Clemons*, 879 S.W.2d at 391; *Houston Petroleum*, 830 S.W.2d at 155. Likewise, in applying the "eight corners rule," any legitimate doubt must be resolved in favor of the insured. *National Union*, 939 S.W.2d at 141; *accord LaFarge*, 61 F.3d at 394.[12]

Consequently, the district court erred in concluding that the Pyron complaint did not concern activities performed "pursuant to" the service contract between S&C and La Gloria, as a matter of law. Nevertheless, the judgment must be affirmed, as La Gloria does not satisfy the second requirement for an "additional insured" under the commercial general liability policy: a written contract.

2.

The commercial general liability policy issued by Sphere Drake limited the insurance coverage provided to "additional insureds,"

---

[12] *See also Texas Med. Liab. Trust*, 1997 WL 151979, at *2; *Clemons*, 879 S.W.2d at 391-92; *Duncanville Diagnostic Ctr.*, 875 S.W.2d at 789.

13

affording such coverage "only with respect to operations performed by the named insured pursuant to a written contract." Therefore, La Gloria is entitled to defense and indemnity under the policy only if the activities alleged in the Pyron lawsuit were performed pursuant to the written contract executed by La Gloria and S&C. Sphere Drake claims, however, that the written contract had expired, disqualifying La Gloria from coverage as an "additional insured" and excusing the duty to defend. We agree.

The district court did not reach this issue, assuming *arguendo* that the service contract was valid at the time of the accident. Sphere Drake renews its claim on appeal as an alternative ground for affirmance. We may affirm a summary judgment on any ground supported by the record. *Old Republic*, 2 F.3d at 107.

By its express terms, the written contract originally executed between La Gloria and S&C terminated "on or about July 1, 1992." Moreover, the contract could be amended only by written agreement. On November 15, 1993, La Gloria and S&C executed a letter agreement that extended the original service contract through May 15, 1994. The effective date of the extension was November 15, 1993, however, and the extension did not retroactively ratify the contract for services performed between July 1, 1992, and November 15, 1993. Therefore, Sphere Drake claims that the contract was not in effect during that period.

The accident occurred on April 28, 1993, during the interim

14

period between the contracts. Likewise, although the date the steam condensate line was installed is disputed by the parties, it is undisputed that S&C installed the line at some time during the interim period. Therefore, if the written contract had expired during this period, La Gloria is not entitled to coverage as an "additional insured."

La Gloria contends the letter agreement of November 15, 1993, renewing the original written contract, memorialized the contract that existed between La Gloria and S&C during the interim period. Unfortunately, nothing in the letter agreement expressly recognizes the continuous existence of the contract during the interim period. Furthermore, if the renewal was retroactive throughout the interim, the effective date of November 15, 1993, would be mere surplusage. A construction that contradicts the plain language of the contract and renders contractual terms mere surplusage is not reasonable. *See*, *e.g.*, *LaFarge*, 61 F.3d at 396-97. Under these circumstances, the only reasonable interpretation of the letter agreement is that the first written contract had expired during the interim period, and the parties renewed the contract effective November 15, 1993. Because the plain language of the letter agreement is unambiguous, it should be enforced as written. *Id.*

Notwithstanding the plain language of the contract, La Gloria contends that the contract was in effect during the interim. La Gloria offers extrinsic evidence to demonstrate that the parties

continued to perform under the contract during this period.

Extrinsic evidence is not relevant under the "eight corners rule," however. Furthermore, the interpretation advocated by La Gloria would frustrate the plain language of the contract, which provides that the contract can be amended exclusively by written agreement. To permit continued performance to perpetuate the service contract, after the expiration date, would amount to an oral modification, which would contradict the plain language of the contract. Consequently, while continued performance may give rise to an implied contract, it cannot perpetuate a written contract.[13]

Accordingly, the written contract expired on July 1, 1992. Because the commercial general liability policy affords coverage to "additional insureds" only for operations performed pursuant to a written contract, Sphere Drake has no duty to defend. If La Gloria wished to obtain coverage as an "additional insured," it was free to negotiate an extension of the written contract following the expiration date of July 1, 1992. It did not do so.[14] It follows

---

[13] La Gloria contends that the parties may waive the date of performance, and argues that an extension of time may be implied from continued performance. *See Cotten v. Deasey*, 766 S.W.2d 874, 877 (Tex. App.SSDallas 1989, writ denied); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 846 (Tex. App.SSHouston [1st Dist.] 1984, writ ref'd n.r.e.). While the contract may continue in effect, however, the resulting contract is an *implied* contract, not a *written* contract. Hence, while the contract may remain binding on the immediate parties to the agreement, it does not constitute a *written* contract as required by the Sphere Drake policy. To hold otherwise would allow the parties to the underlying contract to frustrate the express requirements imposed by the plain language of the insurance policy, an impermissible third-party effect. Regardless of their continued performance, therefore, the *written* contract between La Gloria and S&C expired July 1, 1992.

[14] *Cf. Capital Bank*, 861 S.W.2d at 88 (finding no duty to defend where the
(continued...)

16

that, insofar as Sphere Drake was under no duty to defend La Gloria, it also had no duty to indemnify it. *See Farmers Texas*, 1997 WL 78574, at *2.

## IV.

In summary, the district court erred in finding that the Pyron lawsuit did not concern activities performed "pursuant to" the contract between La Gloria and S&C, for purposes of the "eight corners rule." Nevertheless, because the written contract expired on July 1, 1992, La Gloria did not qualify as an "additional insured" at the time of the events that form the basis of the Pyron lawsuit. Accordingly, Sphere Drake is under no duty to defend or indemnify La Gloria. Therefore, the judgment is AFFIRMED.[15]

---

[14](...continued)
allegations in the complaint occurred after the expiration of coverage under the insurance policy).

[15] Because we hold that La Gloria did not qualify as an "additional insured" under the commercial general liability policy, we do not consider whether the employee exclusion would otherwise preclude coverage.